Avis **DRISKILL** and Bobby C. **Driskill, Appellants,**

v.

**STATE of Texas, State.**

**No. 2–88–232–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 26, 1989.

Carol A. Swanda, W. Brice Cottongame, Wallace Craig and Assoc., Fort Worth, for appellants.

Jim Mattox, Atty. Gen., Mary F. Keller, First Asst. Atty. Gen., Lou McCreary, Executive Asst. Atty. Gen., John W. Kennedy, Asst. Atty. Gen., for appellee.

Before WEAVER, C.J., and KELTNER and LATTIMORE, JJ.

### OPINION

LATTIMORE, Justice.

This is an appeal from a summary judgment for appellee, the State of Texas, ordering appellants, Avis and Bobby C. Driskill, take nothing. The Driskills have perfected this appeal.

We affirm.

Avis Driskill was injured when she was struck by a car driven by Debra Cearnal, an employee of the Texas Comptroller's Office. The Driskills settled their claims against Cearnal, and signed a release which discharged Cearnal, but reserved the Driskill's cause of action against the State. The Driskills then filed suit against the State alleging Cearnal was acting in the scope of her employment. The State filed a motion for summary judgment asserting it was immune from suit under the Texas Tort Claims Act, TEX.CIV.PRAC. & REM. CODE ANN. ch. 101 (Vernon 1986 and Vernon Supp.1989) ("Act"), because:

1. Cearnal was not named as a party to the suit and any claim against Cearnal would be barred by limitations,

2. the release of the Driskills' claim against Cearnal acted as a release of the State,

3. Cearnal would not be personally liable to the Driskills,

4. the Driskills had already recovered their damages from Cearnal, and

5. the State is immune for negligent acts of its employees arising out of the assessment or collection of taxes.

The first four grounds for summary judgment are interrelated in that each ground presents a legal argument that the Driskills cannot recover from the State after releasing Cearnal. There are no disputed issues of fact which are material to the grounds for summary judgment. It is undisputed that the Driskills released Cearnal and that Cearnal was acting in the scope of her employment.

The trial court granted the motion for summary judgment without specifying on which ground the court relied. We must affirm the trial court's judgment if any one of the five grounds is sufficient to support the order. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ den.). The Driskills raise eleven points of error contending none of the five grounds support the judgment.

■ *Ground No. 1.* Cearnal was not named as a party to the suit and any claim against Cearnal would be barred by limitations.

In their first point of error, the Driskills contend the first ground in the motion for summary judgment will not support the judgment of the trial court because a cause of action exists against the State for the negligent acts of the employee even though the employee was not named as a party. The pleadings of a suit brought under the Act must name as defendant the governmental unit against which liability is to be established. TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.102(b). A governmental unit is liable for personal injury caused by the negligence of an employee acting within the scope of his employment if the employee would be personally liable under Texas law. *Id.* at sec. 101.021. Nothing in these provisions indicate a plaintiff must join the negligent State employee as a codefendant, and the State has not cited any authority for this novel idea. The Driskills' first point of error is sustained.

■ *Ground No. 2.* The release of the Driskills' claim against Cearnal acted as a release of the State.

In their second, third, and fourth points of error, the Driskills contend the second ground in the motion for summary judgment will not support the judgment of the trial court because release of the State employee does not release the Driskills' cause of action against the State. The State has waived governmental immunity for personal injury arising from the use of a motor vehicle driven by an employee acting within the scope of her employment. *Id.* at 101.021(1)(A). We discuss the relevant exception to this waiver of liability in our discussion of the fifth ground for summary judgment. Where the Act waives governmental immunity, "the general law of this State will apply to litigants in the same manner it would apply to individuals." *City of Denton v. Mathes,* 528 S.W.2d 625, 632 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). Settlement with and release of an employee does not bar a subsequent suit against the employer under the doctrine of respondeat superior so long as the plaintiff's damages have not been fully satisfied. *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 806–07 (Tex.

1980). Therefore, release of Cearnal does not operate to release the State. *Cf. City of Houston v. Aber,* 770 S.W.2d 89 (Tex. App.—Houston [14th Dist.] 1989, n.w.h.) (plaintiff may recover from city after settling with employee).

■ The State makes two arguments to support their position that we should not follow *Knutson.* First, the State contends the doctrine of respondeat superior does not apply to the State. The State cites *Welch v. State,* 148 S.W.2d 876, 878 (Tex. Civ.App.—Dallas 1941, writ ref'd) ("[T]he doctrine of respondeat superior has no application whatever to the State, its exemption being based on its sovereign character."). *Welch* was decided before the legislature enacted the Act. Where the Act waives governmental immunity, respondeat superior will apply to the State. *Davis v. County of Lubbock,* 486 S.W.2d 109, 110 (Tex.Civ.App.—Amarillo 1972, no writ) (the State is "exempt from the responsibilities of respondeat superior except to the extent that immunity has been waived by the Texas Tort Claims Act.").

Second, the State contends we are not bound by *Knutson* because its discussion of respondeat superior is dicta. Even if it is dicta, we find it persuasive. We hold the Driskills did not release their cause of action against the State when they released Cearnal. The Driskills' third and fourth points of error are sustained.

■ *Ground No. 3.* Cearnal would not be personally liable to the Driskills.

In their fifth and sixth points of error the Driskills contend the third ground in the motion for summary judgment will not support the judgment of the trial court. The Act provides the State may be liable for negligent acts of an employee if the damage arises from use of a motor vehicle and the employee "would be personally liable under Texas law." TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.021(1). The State contends the Driskills cannot establish Cearnal "would be" liable because Cearnal is no longer liable due to the settlement with and release by the Driskills. As we discussed in the first point of error, section 101.021(1) does not require the

State employee to be found liable as a codefendant, and it is not relevant that the cause of action against Cearnal is barred by limitation. It is likewise irrelevant that the cause of action against Cearnal is barred by release. The Driskills' fifth and sixth points of error are sustained.

■ *Ground No. 4.* The Driskills had already recovered their damages from Cearnal.

In their seventh, eighth, and ninth points of error, the Driskills contend the fourth ground in the motion for summary judgment will not support the judgment of the trial court. The State does not contend the Driskills received full satisfaction of their damages when they settled with Cearnal, but the State argues the Driskills' action against the State is barred by TEX.CIV. PRAC. & REM.CODE ANN. sec. 101.106 which provides:

A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

*Id.* If the Driskills had settled their cause of action against the State, section 101.106 would bar an action against Cearnal. Section 101.106 does not bar an action against the State because the plain language of the statute does not allow such an interpretation. The Driskills' seventh, eighth, and ninth points of error are sustained.

■ *Ground No. 5.* The State is immune for negligent acts of its employees arising out of the assessment or collection of taxes.

In their tenth and eleventh points of error, the Driskills contend the fifth ground in the motion for summary judgment will not support the judgment of the trial court. The Act waives governmental immunity for personal injury proximately caused by the negligent act of an employee acting within his scope of employment if the personal injury arises from the use of a motor-driven vehicle. *Id.* at sec. 101.021(1). However, this waiver of liability does not apply to a claim arising "in connection with assessment or collection of taxes by a gov-

ernmental unit." TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.055. Unless a statute is ambiguous, we must follow the clear language of the statute. *Republic-Bank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). Before the accident, Cearnal was at a local business concerning their delinquent taxes. At the time of the accident, Cearnal was on her way to see another taxpayer to collect taxes or discuss collecting taxes. The State has not waived governmental immunity because Cearnal's negligence, if any, is within section 101.055(1)'s statutory exception to the Act's waiver of liability.

The Driskills contend section 101.055(1) does not apply to the negligent operation of a motor vehicle. In effect, the Driskills contend section 101.055(1) creates an exception to the State's waiver of liability in section 101.021(2), but does not create an exception to the State's waiver of liability in section 101.021(1). We see no reason to make this distinction. TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.051 creates statutory exception to the State's waiver of liability relative to school districts and junior college districts, but section 101.051 clearly states the exception does not apply to motor vehicles. If the legislature had intended to so limit the scope of section 101.055(1), they would have so provided in the same plain language used in section 101.051.

One other court has construed section 101.055(1). *Harris County v. Dowlearn,* 489 S.W.2d 140, 146–47 (Tex.Civ.App.— Houston [14th Dist.] 1972, writ ref'd n.r.e.). *Dowlearn* is not on point because it did not involve a motor vehicle accident.

The Driskills' tenth and eleventh points of error are overruled. The fifth ground for summary judgment is sufficient to support the judgment of the trial court. We affirm.

KELTNER, J., dissents.

KELTNER, Justice, dissenting.

I respectfully dissent, because I do not believe that Cearnal's negligence pertains to the "assessment or collection of taxes"

exception exemption as contemplated by the Texas Tort Claims Act. TEX.CIV. PRAC. & REM.CODE ANN. sec. 101.001, *et seq.*, (Vernon 1986 and Vernon Supp. 1989).

Prior to the accident, Cearnal was at a local business discussing payment of delinquent taxes. She was driving her vehicle to another taxpayer in an attempt to collect taxes when the accident occurred. At the time of the accident, however, Cearnal was not performing duties "in connection with the assessment or collection of taxes" within the meaning of the statutory exception, TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.055(1), nor did the accident have anything to do with taxes. Cearnal was, instead, negligently operating a motor vehicle when the accident occurred. Such conduct, I believe, falls outside the scope of the section 101.055(1) exemption, and governmental immunity was waived under section 101.021. TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.001, *et seq.*

The majority suggests that section 101.-055(1) creates an exception to the State's waiver of immunity found in section 101.-021. The State is liable for personal injuries resulting from its employee's negligent use of a motor vehicle if the employee would be liable under Texas law. TEX. CIV.PRAC. & REM.CODE ANN. sec. 101.-021(1). Under section 101.055(1), this immunity is not waived, however, if the claim arises "in connection with the assessment or collection of taxes by a governmental unit." TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.055(1). If these two sections are construed together in the manner, suggested by the majority, Cearnal is not liable because the Driskills' "claim arose in connection with the assessment or collection of taxes." TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.055(1). In my opinion a narrower interpretation of section 101.055 is more consistent with the legislative intent behind the Texas Tort Claims Act.

Texas case law provides little guidance in the interpretation of section 101.055. We must then ascertain, if possible, the intent of the Legislature as expressed in the language of the entire statute rather than merely isolated portions. *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974). Once this legislative intent is clear, we must enforce such intent even if inconsistent with the plain meaning of the statute. *State v. Dyer*, 145 Tex. 586, 200 S.W.2d 813, 815 (1947).

The Federal Tort Claims Act has a similar provision. It was passed in 1946 as a remedy for injuries to persons and property caused by the tortious conduct of government agents or employees. Although the facts differ from those in the case before us, legislative history of the Federal Tort Claims Act was examined by the Supreme Court in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). It concluded that while the Federal Tort Claims Act focused on ordinary common-law torts, "the example which is reiterated in the course of the repeated proposals for submitting the United States to tort liability is 'negligence in the operation of motor vehicles.' "[1] *Id.* 346 U.S. at 28, 73 S.Ct. at 964.

Both Acts provide for exemptions from this general waiver of immunity. Congress excluded liability for torts arising from the negligent performance of discretionary governmental functions or regulatory acts in order to "protect the Government from liability that would seriously handicap efficient government operations." *United States v. Muniz*, 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963); *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). "Congress [sought] to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig*, 467 U.S. at 814, 104 S.Ct. at 2764. Moreover, House Committee reports explaining the

---

**1.** In its brief, the United States also states that the dominant legislative purpose of the Federal Tort Claims Act was to provide relief for common-law torts, "primarily of the type of automobile accidents." *Dalehite*, 346 U.S. at 15–18, 73 S.Ct. at 956–959, 97 L.Ed. at 1427–30.

exemption section of the Federal Tort Claims Act state that:

> [The] section ... exempting claims arising from the administration of ... the fiscal operations of the Treasury [is] *not intended to exclude such common-law torts as an automobile collision caused by the negligence of an employee of the Treasury Department or other federal agency administering those functions.*

*Dalehite,* 346 U.S. at 30 n. 21, 73 S.Ct. at 964–65 n. 21 (emphasis added). Thus, draftsmen of the Federal Tort Claims Act did not intend to keep the government immune from liability in tort for its employees' negligence in automobile accidents.

It is interesting to note that a similar provision of the Federal Tort Claims Act has been construed to limit the United States' governmental immunity to those situations where the injuries resulted directly from the assessment or collection of taxes. 28 U.S.C.A. 2680 (Cum.Supp.1989); *Pugh v. Internal Revenue Service,* 472 F.Supp. 350 (D.C.Pa.1979) (no cause of action for tortious conduct and threats by I.R.S. during audit); *Scott v. Internal Revenue Service,* 622 F.Supp. 537 (E.D.Tenn.1985) (no cause of action for various tortious acts by the I.R.S. nor in claim of monies as due and owing from the I.R.S.); *United States v. Banner,* 226 F.Supp. 904 (N.D.N.Y.1963) (no cause of action for tortious conduct when the government levies on taxpayer's accounts receivable and then subsequently fails to collect the accounts); *Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299 (5th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (no cause of action for tortious conduct when the I.R.S., in collecting delinquent taxes, wrongfully levies upon property); *Paige v. Dillon,* 217 F.Supp. 18 (S.D.N.Y. 1963) (no cause of action for the tortious conduct of an I.R.S. agent in visiting taxpayer's home, notifying taxpayer's bank, employer, and tenant of delinquent taxes, and refusing to amortize such taxes); *Morris v. United States,* 521 F.2d 872 (9th Cir.1975) (no cause of action for tortious conduct when I.R.S. agent informs taxpayer's creditors of purported tax liability, taxpayer subsequently loses credit and busi-

ness including harassment by agent during audit); *Capozzoli v. Tracey,* 663 F.2d 654 (5th Cir.1981) (no cause of action for tortious conduct when I.R.S. agent photographs taxpayer's residence).

We find no Texas cases construing sections 101.021 and 101.055 together. The Supreme Court, however, in examining a similar exclusion provision of the Texas Tort Claims Act pertaining to police and fire protection held that:

> [I]f the negligence causing an injury lies in the formulating of policy—i.e., the determining of the *method* of police protection to provide—the government remains immune from liability. If, however, an officer or employee acts negligently in carrying out that policy, government liability may exist under the Act. The instant case provides a good example of the distinction between these two forms of negligence. Here, the Texas Highway Department, pursuant to a statute fixing maximum speeds, has a policy of detecting and apprehending individuals who exceed the speed limit by use of radar and motor vehicles. Such a policy decision is not subject to an attack of negligence under this Act. This policy, however, obviously does not include directing the officer to strike any vehicle in his path in apprehending a speeder. The accident which occurred in this case was not a part of the formulated policy. Therefore, the State is subject to liability for injuries resulting from the negligence, if any, of the highway patrolman in colliding with mr.  Terrell's vehicle.

*State v. Terrell,* 588 S.W.2d 784, 788 (Tex. .1979).

The Comptroller's office has a policy of visiting taxpayers at their place of business in an effort to collect delinquent sales taxes. Under *Terrell,* such policy decisions do not fall within the Texas Tort Claims Act and thus provide no basis for a negligence cause of action. Nor does such a policy allow employees of the Comptroller's office to negligently collide with other motorists and escape liability merely because they are en route from business to business collecting these taxes. Cearnal's collision

with Driskill had nothing to do with the assessment or collection of taxes. Therefore, under the Supreme Court's reasoning in *Terrell*, the State remains liable for Cearnal's negligence. *Id.*

Only one other court has construed section 101.055(1). *Harris County v. Dowlearn*, 489 S.W.2d 140, 146–47 (Tex.Civ.App. —Houston [14th Dist.] 1973, writ ref'd n.r. e.). The majority suggests that it is not on point because a motor vehicle was not used. I disagree. In *Dowlearn*, plaintiff filed suit under the Texas Tort Claims Act for bodily injuries she sustained when an unattached wall panel fell in the Harris County courthouse while she was obtaining license plates. The Houston court affirmed the judgment for plaintiff because "the suit has nothing to do with the assessment or collection of taxes as contemplated by the statute [and] appellee's injuries had nothing directly to do with taxes." *Id.* at 146.

Based on *Dalehite* and *Terrell*, I believe the majority's suggested interpretation of section 101.055(1) is too broad. For example, this reasoning would make the State liable for motor vehicle accidents caused by the negligence of a park ranger travel-traveling from park to park while retaining immunity for motor vehicle accidents caused by the negligence of a Comptroller's employee traveling from taxpayer to taxpayer. In my opinion, case law and legislative intent indicate Cearnal's conduct falls outside the scope of the exemption and governmental immunity is waived. As a result, I would sustain the Driskills' tenth and eleventh points of error.

Accordingly, I dissent.